## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| OLYMPUS HEALTHCARE | ) | Case Nos. 01-01849 through |
| GROUP, INC., *et al.*, | ) | 01-01858 (KG) |
| | ) | |
| Debtors. | ) | Jointly Administered |

| | | |
|---|---|---|
| | ) | |
| CRAIG R. JALBERT, Liquidating | ) | |
| Supervisor for OLYMPUS | ) | |
| HEALTHCARE GROUP, INC., et al.) | | |
| et al., | ) | Adversary Proceeding No. |
| | ) | A 06-50669 (KG) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PACIFIC EMPLOYERS INSURANCE | ) | Related Documents: 6, 7, 9, 12 |
| COMPANY and ACE AMERICAN | ) | |
| INSURANCE COMPANIES, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION[1]

      The Court has before it the Motion to Compel Arbitration and to Dismiss or Stay Litigation, filed by the defendant, Pacific Employers Insurance Company.  Upon consideration of the Motion and the supporting exhibits, the Opposition of Craig R. Jalbert, the Liquidating Supervisor, the Reply thereto, and oral argument, the Motion will be granted.

---

    [1]  This Memorandum Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Civil Procedure 52, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7052.

## I.   BACKGROUND

Olympus Healthcare Group, Inc. and several of its direct and indirect subsidiaries, (the "Debtors") each filed voluntary petitions under Chapter 11 of the Bankruptcy Code on May 25, 2001. As of the petition date, Debtors provided acute (non-surgical), chronic, medical and rehabilitation healthcare services to more than 900 patients in Connecticut and Massachusetts, employing approximately 1,600 persons in nine facilities. The Court approved the Debtors' Joint Second Amended Plan of Reorganization by the Confirmation Order, dated May 6, 2002. Craig R. Jalbert was appointed the Debtors' Liquidating Supervisor (the "Liquidating Supervisor") by the Confirmation Order.

On May 20, 2006, the Liquidating Supervisor brought this adversary proceeding against Pacific Employers Insurance Company ("Pacific") and Ace American Insurance Companies ("ACE"). The Complaint seeks to recover monies pursuant to 11 U.S.C. § 542 which are allegedly owed by Pacific to the Debtor under a Funded Deductible Workers' Compensation Program Agreement. Additionally, the Complaint seeks remedies for breach of contract under state law, and breach of the automatic stay pursuant to 11 U.S.C. § 362. In lieu of an answer, Pacific filed its Motion to Compel Arbitration and to Dismiss or Stay Litigation (the "Motion") on

June 21, 2006.[2]  After briefing on the Motion, the Court heard argument on August 10, 2006.  At the conclusion of the hearing, the Court took this matter under advisement.

## II.  JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(1), and it is a core proceeding under 28 U.S.C. §157(b)(2), (A), (E), and (O).  Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1409.

## III.  DISCUSSION

Prior to Debtors' bankruptcy filings, Debtors and Pacific entered into a Funded Deductible Workers' Compensation Program Agreement (the "Program Agreement") effective on November 10, 1999, which provided for workers' compensation insurance coverage for Debtors on any claims made by its employees during the term of the Program Agreement.  Under the Program Agreement, Debtors were required to fund, largely in advance, categories of expenses and reimbursements which Debtors expected to incur.  Monies remitted to Pacific were held in the "Deductible Reimbursement Fund" and were audited on the second and fourth anniversary of the term of the Program Agreement, and yearly thereafter.  The amount Debtors paid into the Fund was determined and adjusted by formula, with any shortfall or excess received to be corrected promptly by the owing

---

[2]  Pacific subsequently filed its Answer on August 9, 2006.  Pacific alleges that ACE is not a proper party defendant to this proceeding.  ACE has not responded to the Complaint, and is not a party to the Motion.

party.  The Liquidating Supervisor states that the excess amount in the Fund is at least $173,488.80, and Pacific has allegedly refused to refund the excess funds.  Pacific denies owing anything to Debtors.

### A.  Motion to Compel Arbitration

In its Motion, Pacific moves this Court to compel enforcement of the arbitration clause contained within the Program Agreement.  The Program Agreement provides:

> "[a]ny controversy, dispute, claim or question arising out of or relating to this agreement, including without limitation its interpretation, performance or non-performance by any party, or any breach thereof  . . . shall be referred to and resolved exclusively by three arbitrators through private, confidential arbitration conducted in Philadelphia, PA."

Pacific argues that the claims the Liquidating Supervisor asserts in the Complaint are subject to resolution through a panel of arbitrators rather than by the Court because all of the claims arise out of or relate to the Program Agreement and this Court has no discretion to deny enforcement of the arbitration clause. Pacific also moves to dismiss the adversary proceeding as improper or, alternatively, to stay the proceedings pending the results of the arbitration.

The Liquidating Supervisor makes two primary arguments against arbitration.  First, the Liquidating Supervisor asserts that the dispute leaves nothing to arbitrate in that: (1) this is

4

a core matter to compel turnover of funds that are clearly assets of the estate and to which Pacific has no claim; and (2) the amount of the claim has been fixed and is currently due and owing. Second, the Liquidating Supervisor claims that the arbitration clause is unenforceable because it is boilerplate language with an unconscionable bias toward the insurer.

In assessing whether a proceeding should be stayed in favor of arbitration, the Court must engage in a three-part analysis: "1) whether the dispute is governed by an enforceable arbitration clause, 2) whether the Court has discretion to deny the enforcement of the arbitration clause  . . . , and 3) whether the Court should exercise its discretion to deny arbitration."[3] *Shubert v. Wellspring Media (In re Winstar Communications, Inc.)*, 355 B.R. 556, 562 (Bankr.D.Del. 2005).

## 1. Whether the Dispute is Governed by an Enforceable Arbitration Clause

It is quite evident from the language of the Program Agreement that the arbitration provision was intended to be very broad and to cover many varied circumstances.  Neither party has contested the applicability of the arbitration provision to this particular dispute.  Each claim asserted by the Liquidating Supervisor "relates to" or directly "arises from" the Program Agreement and therefore, fits squarely within the broad sweep of

---

[3]  Because the Court has determined that it has no discretion to deny enforcement of the arbitration clause, it need not reach a conclusion regarding whether to exercise such discretion.

the arbitration clause.   However, the Liquidation Supervisor has challenged the enforceability of the arbitration clause, alleging that it is unconscionably biased toward Pacific.[4]

Unconscionability is a "defensive contractual remedy which serves to relieve a party from an unfair contract or from an unfair portion of a contract." *Harris v. Green Tree Financial Corp.*, 183 F.3d 173, 181 (3d Cir. 1999) (quoting *Germantown Mfg. Co. v. Rawlinson*, 341 Pa. Super. 42, 55 (Pa. Super. 1985)). "[U]nconscionability requires a two-fold determination: that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions." *Harris*, 183 F.3d at 181 (quoting *Bensalem Township v. International Surplus Lines Ins. Co.*, 38 F.3d 1303, 1312 (3d Cir. 1994)).[5]  These categories are referred to as "procedural unconscionability" and "substantive unconscionability."

### a.   Procedural Unconscionability

"Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear

---

[4]   The burden of proving unconscionability of a contract provision is on the party challenging the provision.  *Harris v. Green Tree Financial Corp.*, 183 F.3d 173, 181 (3d Cir. 1999).

[5]   The Program Agreement contains a choice of law provision designating Pennsylvania law to govern the terms of the parties' agreement.

language." *Harris*, 183 F.3d at 181.  In this instance, there is little evidence to suggest that the arbitration clause contained within the Program Agreement is procedurally unconscionable.  The arbitration clause is contained within the body of the Program Agreement at Article VI, entitled "GENERAL PROVISIONS/ARBITRATION." It is the last numbered paragraph in that section and appears in the same typeface and font as all other terms and provisions of the Agreement.  It is not concealed or printed in small print or on the reverse side of the contract. Furthermore, there is no evidence in the record to imply that this was a "take it or leave it" provision or that Debtors had no meaningful choice as to the acceptance of the terms.  Olympus Healthcare Group, Inc. was a sophisticated business entity, operating several large medical and rehabilitative health facilities in Connecticut and Massachusetts, and employing as many as 1600 persons.  It undoubtedly had access to legal counsel to assist with drafting and negotiating the form of the Program Agreement, as well as understanding its terms and conditions.

### b.  Substantive Unconscionability

"Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Id.*  The Liquidating Supervisor argues that the arbitration clause is substantively unconscionable by disrupting the Bankruptcy Code's objective of

equity.   The Liquidating Supervisor points to a clause in the provision which allows the panel of arbitrators to "abstain from following the strict rules of law" and to "make their decision with regard to the custom and usage of insurance business as at the effective date of this Agreement."   The Liquidating Supervisor theorizes that this provision eliminates any guarantee of due process because the arbitrators have no obligation to apply contract law or any legal principal in rendering their decision. Likewise, the Liquidating Supervisor worries that the provision allows the arbitrators unfettered ability to avoid not only the law, but the bargain that the Debtor had struck with Pacific.

The Liquidating Supervisor's concerns should be negated when he takes into account the entire import of the arbitration provision.   While the provision allows for certain deviations from established procedures or rules of law, it also calls for the Commercial Arbitration Rules of the American Arbitration Association to apply.   These Rules are commonly employed in arbitrations and have built-in protections to ensure that each party is given an opportunity to be heard.   The Rules govern the conduct of the arbitration and provide the parties with the ability to present their claims supported with evidence and witnesses if they so choose.   For instance, Rule 30 (a) provides:

> The claimant shall present evidence to support
> its claim. The respondent shall then present
> evidence to support its defense. Witnesses for
> each party shall also submit to questions from

8

> the arbitrator and the adverse party. The
> arbitrator has the discretion to vary this
> procedure, provided that the parties are
> treated with equality and that each party has
> the right to be heard and is given a fair
> opportunity to present its case.

Commercial Arbitration Rule 30(a).

Additionally, the Program Agreement specifically provides
that the arbitrators "shall be disinterested, neutral individuals
who have experience and qualifications in the subject matter of the
Controversy." Furthermore, the provision establishes a mechanism
for the selection of arbitrators, which will ensure that the
parties have fair and disinterested decision makers conducting the
arbitration.[6] The Commercial Arbitration Rules also impose a Code
of Ethics upon all arbitrators and have special rules for party-
appointed arbitrators. This Code of Ethics details the conduct of
the arbitrators "so that the integrity and fairness of the process
will be preserved." Code of Ethics, Canon I.

The Liquidating Supervisor's arguments and concerns are
demonstrably unfounded. "[W]e are well past the time when judicial
suspicion of the desirability of arbitration and of the competence
of arbitral tribunals inhibited the development of arbitration as

---

[6] The Program Agreement requires: "One arbitrator shall be chosen
by each party and the third by the two so chosen. If either party
refuses or neglects to appoint an arbitrator within thirty (30) days
after receipt of written notice from the other party requesting it to do
so, the requesting party may choose a total of two arbitrators who shall
choose the third. If the arbitrators fail to select the third arbitrator
within ten (10) days after both have been named, each arbitrator shall
name three candidates, of whom the other shall decline two, and the
decision shall be made by drawing lots."

an alternative means of dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-627 (U.S. 1985). Accordingly, the Court finds that the Liquidating Supervisor has failed to establish that the arbitration provision is procedurally or substantively unconscionable and may not be enforced.

### 2.  Whether the Court has Discretion to Deny Enforcement of the Arbitration Clause

The parties are essentially in agreement as to the applicable law regarding the arbitration of disputes.[7] The leading Third Circuit case is *Mintze v. American General Financial Services, Inc. (In re Mintze)*, 434 F.3d 222 (3d Cir. 2006). *Mintze* involved a Chapter 13 debtor who had entered into a home equity loan agreement which contained an arbitration clause. The Chapter 13 debtor filed suit seeking to enforce recision of the loan agreement. The creditor moved to compel arbitration of the matter pursuant to the arbitration clause contained within the agreement. The Bankruptcy Court declined to compel arbitration and on appeal the District Court affirmed. However, on further appeal, the Third Circuit Court of Appeals reversed, holding that the Federal

---

[7]  In his brief, the Liquidating Supervisor has erroneously relied upon the core vs. non-core distinction used in *In re Winstar Communications, Inc.*, 335 B.R. 556 (Bankr.D.Del. 2005). In *Winstar*, the Court rested its discretion to deny enforcement of an arbitration clause on whether the claims asserted were core or non-core. This distinction has been clarified by the recent case of *Mintze v. American General Financial Services, Inc. (In re Mintze)*, 434 F.3d 222 (3d Cir. 2006). During argument before the Court, the Liquidating Supervisor conceded that the controlling precedent is *Mintze*.

10

Arbitration Act of 1947, 9 U.S.C. § 1, *et seq.* (the "FAA") required arbitration of the dispute unless the party opposing arbitration could show a Congressional intent to preclude the waiver of judicial remedies for the statutory rights at issue and that the Chapter 13 debtor had failed to establish such an intent. *Mintze*, 434 F.3d at 233.

The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A court may order the parties to comply with an arbitration clause if one party fails or refuses to arbitrate a dispute in accordance with the agreement. 9 U.S.C. § 4. The FAA has thus created a strong presumption in favor of arbitration. *See*, *Mintze*, 434 F.3d at 229; *Porter-Hayden Co. v. First State Mgmt. Group, Inc. (In re Porter-Hayden Co.)*, 304 B.R. 725 (Bankr. D. Md. 2004).

However, as the Court in *Mintze* explained, the FAA may not apply if the standard elucidated in *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220 (1987), has been met:

> If a party opposing arbitration can demonstrate that "Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue," the FAA will not compel courts to enforce an otherwise applicable arbitration agreement. To overcome enforcement of arbitration, a party must establish congressional intent to create an exception to the FAA's mandate with respect to the party's statutory claims. Congressional

> intent can be discerned in one of three ways:
> (1) the statute's text, (2) the statute's
> legislative history, or (3) "an inherent
> conflict between arbitration and the statute's
> underlying purposes."

*Mintze*, 434 F.3d at 229 (citations omitted).

The starting point for deciding the Motion is to categorize the claims made by the Liquidating Supervisor. This categorization does not rest upon the distinction between the core versus non-core nature of the claims at issue.[8]  *Id.* at 229 - 230. Rather, the Third Circuit has held that the appropriate analysis turns upon whether the claims are derived from the debtor or the claims are those "that the Bankruptcy Code created for the benefit of the creditors of the estate." *Id.* at 230 - 31; *accord. Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1155 (3d Cir. 1989).  For claims that are derivative of the debtor, the Court does not have discretion and such claims are subject to mandatory enforcement of the arbitration agreement.  However, the Court may exercise its discretion if the claims are of a nature created by the Code for the benefit of creditors.  *In re Statewide Realty Company*, 159 B.R. 719, 723 (Bankr. D.N.J. 1993).  This divergence stems from the basic premise that it is only the parties to the arbitration agreement who will be bound by such provisions and whose intent must be satisfied.  *Mitsubishi Motors Corp. v.*

---

[8]  The distinction between core and non-core claims relates only to a bankruptcy court's jurisdiction to fully adjudicate the matter.  *Id*. at 229.

*Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (U.S. 1985) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). "[T]here is no justification for binding creditors to an arbitration clause with respect to claims that are not derivative from one who was a party to it."[9]  *Hays*, 885 F.2d at 1155.

     In this instance, Debtors and Pacific were the only parties bound by the Program Agreement, and the Liquidating Supervisor succeeded to the rights of Debtors by Debtors' Second Amended Joint Plan of Reorganization.  Therefore, the Liquidating Supervisor stands in the place of Debtors with regard to its obligations under the Program Agreement.

     In its Complaint, the Liquidating Supervisor has asserted claims for "turnover" of the monies remaining in the Deductible Reimbursement Fund, breach of contract, and breach of the automatic stay.  Each of these counts directly relates to the Program Agreement or from the alleged breach thereof.  The breach of contract claim under state law is unmistakably derived from the rights of the Debtor under the Program Agreement.  Likewise, the breach of the automatic stay count derives from the Debtors.  The automatic stay is one of the "fundamental debtor protections" which

---

     [9]   In *Hays*, the Chapter 11 trustee was asserting claims under § 544(b).  The Court found that these claims were not derivative of the debtor, but in fact, they were creditor claims that the Code authorizes the trustee to assert on their behalf.  *Id.*  Therefore, the trustee was only bound to the arbitration clause with respect to the claims it inherited from the debtor.

is used as a shield to protect the debtor and the assets of the estate from creditors seeking to recover on pre-petition claims. H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1977).

The "turnover" claim "is a remedy available to debtors to obtain what is acknowledged to be property of the bankruptcy estate." *Hechinger Investment Co. of Delaware, Inc. v. Allfirst Bank (In re Hechinger Investment Co. of Delaware, Inc.)*, 282 B.R. 149, 162 (Bankr. D. Del. 2002) (quoting *Asousa Partnership v. Pinnacle Foods, Inc. (In re Asousa Partnership)*, 264 B.R. 376, 384 (Bankr. E.D.Pa. 2001)). "It is not a remedy available to recover claimed debts which remain unliquidated and/or in dispute." *In re Hechinger*, 282 B.R. at 162. Moreover, "it cannot be used to determine the rights of parties in legitimate contract disputes." *In re Asousa Partnership*, 264 B.R. at 385 (citing *FLR Company, Inc. v. Brant Construction (In re FLR Company, Inc.)*, 58 B.R. 632, 634 (Bankr. W.D. Pa. 1985)). The Liquidating Supervisor argues that the amount of the claim has been admitted by Pacific's agent [10] and Pacific has no basis for withholding or retaining the monies in the "Deductible Reimbursement Fund." However, Pacific vehemently disputes that any amount is due and owing under the Program Agreement and has denied the same at argument before the Court and in its Answer. Pacific also argues that it may retain such amounts

---

[10]   In its brief, Pacific has indicated that it will contest any allegation of admission on an agency theory.

in its discretion as collateral security under the agreement.  It
is evident from the parties' contentions that there exist several
factual issues with relation to the funds and the claim is in fact
not liquidated or undisputed.  These disputes are merely claims
arising from the contract and the alleged breach thereof, and are
not properly addressed in the form of a "turnover" action brought
by the Liquidating Supervisor.[11]

    Hence, the Court finds that the claims asserted by the
Liquidating Supervisor in the Complaint are claims derived from
Debtors.  As such, the claims are mandatorily subject to the
arbitration provision unless there is congressional intent to
preclude the waiver of judicial remedies for the statutory rights
at issue.

    The Liquidating Supervisor has advanced no persuasive
argument that there is any Congressional intent to preclude the
waiver of judicial remedies for the claims at issue.  The
Liquidating Supervisor has only made vague arguments in its brief
asserting that staying or dismissing this proceeding in favor of
arbitration would seriously jeopardize the objectives of the
Bankruptcy Code.  First, the Liquidating Supervisor argues that
arbitration of this matter would disrupt the Code's objectives of

---

[11]  The result would be the same even had the Court decided Debtors'
claim for relief was for turnover, as such relief "is a remedy available
to debtors to obtain property of the bankruptcy estate.  *In re Hechinger*,
282 B.R. at 162.

equality of distribution and efficient resolution of claims. The Liquidating Supervisor argues that by allowing an aggrieved party to compel enforcement of an arbitration clause, it gives that party an exalted status over all other creditors. Second, according to the Liquidating Supervisor, arbitration delays distributions to creditors of the Debtors' estate. Finally, the Liquidating Supervisor argues that the Bankruptcy Court is in a better position to resolve the dispute than a panel of arbitrators without specialized knowledge of bankruptcy matters.

A review of the Bankruptcy Code and its legislative history does not evidence an indication that Congress intended to preclude such a waiver in this instance and the Liquidating Supervisor has not directed the Court to any specific intent in the statute. Furthermore, the Liquidating Supervisor's arguments are insufficient to conclude that a conflict between the bankruptcy provisions and the arbitration clause exists to preclude enforcement. The Liquidating Supervisor has thus failed to carry its burden under the *McMahon* test and this Court has no discretion to deny enforcement of the arbitration clause. This Court must therefore enforce the arbitration provision contained within the Program Agreement as contemplated by the parties.

**B.  Motion to Dismiss or Stay Litigation**

Pacific also urges this Court to dismiss the adversary proceeding as improper or, in the alternative, to stay the

proceedings pending the results of arbitration.  The Liquidating Supervisor is in agreement that should the Court find in favor of arbitration, a stay of the proceedings would be appropriate.

The FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 USCS § 3.  The Court finds that a stay of this proceeding is consistent with the mandate of the statute and has the benefit of maintaining the Court's jurisdiction to the extent necessary and appropriate.  Therefore, the Court will not dismiss the adversary proceeding at this time.

**IV.  CONCLUSION**

Based upon the forgoing, the Motion of Pacific Employers Insurance Company to Compel Arbitration and to Dismiss or Stay Litigation, will be **GRANTED.**  This adversary proceeding shall be stayed pending the completion of arbitration.  An appropriate order follows.

DATED: October 6, 2006
     Wilmington, DE

_____
KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

17